Filed 10/19/18

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>       v.<br><br>CODY WADE HENSON,<br><br>    Defendant and Respondent. | F075101<br><br>(Super. Ct. Nos. F16901499,<br>F16903119)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Lisa A. Smittcamp, District Attorney, Robert Whalen, Chief Deputy District Attorney, and Douglas O. Treisman, Deputy District Attorney, for Plaintiff and Appellant.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

**SEE DISSENTING OPINION**

Penal Code section 954 provides, in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."[1]  Section 949 provides, in part: "The first pleading on the part of the people in the superior court in a felony case is the indictment, information, or the complaint in any case certified to the superior court under Section 859a."

When a defendant is held to answer on charges brought in separate cases following separate preliminary hearings, do the People need the court's permission to file a unitary information, covering the charges in both those cases, as their first pleading? Reading the foregoing statutes together, we conclude that, where the charges meet the requirements set out in section 954, the answer is no.  In that situation, whether to file a unitary information covering all charges, or a separate information for each case, is a matter of prosecutorial discretion.  If the defendant believes the inclusion of all charges in a unitary information prejudices him or her, he or she may move for severance of counts.

In this case, the defendant challenged the inclusion of all counts in a unitary information by means of a motion to set aside the information pursuant to section 995. The judge agreed the charges could not be joined without the court's permission, and set aside the information with respect to the charges that arose in one of the two cases covered by the information.  In so doing, the judge deliberately ignored half of the record before him.  He erred in his interpretation of the controlling law and in his ruling.  The People having appealed, we reverse and remand for further proceedings.

---

**1**     Further statutory references are to the Penal Code unless otherwise stated.

# PROCEDURAL HISTORY

On March 7, 2016, a complaint was filed in Fresno County Superior Court case No. F16901499 (case 499), charging Cody Wade Henson (defendant) with unlawfully driving or taking a vehicle after having suffered three prior felony theft convictions involving vehicles (§ 666.5; Veh. Code, § 10851, subd. (a); count 1, a felony), receiving stolen property, to wit, a motor vehicle, after having suffered three prior felony theft convictions involving vehicles (§§ 496d, subd. (a), 666.5; count 2, a felony), resisting, obstructing, or delaying a peace officer or emergency medical technician (§ 148, subd. (a)(1); count 3, a misdemeanor), and possessing burglary tools (§ 466; count 4, a misdemeanor). The offenses all were alleged to have occurred on March 4.[2] Defendant was further alleged to have served two prior prison terms. (§ 667.5, subd. (b).)

Defendant was arraigned on the complaint on March 8. The public defender's office was appointed to represent defendant, who entered pleas of not guilty to all charges and denied all special allegations. At some point, defendant was released from custody after posting a surety bond. After several continuances, the preliminary hearing was set for May 24.

On May 19, a complaint was filed in Fresno County Superior Court case No. F16903119 (case 119), charging defendant with unlawfully driving or taking a vehicle after having suffered three prior felony theft convictions involving vehicles (§ 666.5; Veh. Code, § 10851, subd. (a); counts 1 & 3, both felonies), receiving stolen property, to wit, a motor vehicle, after having suffered three prior felony theft convictions involving vehicles (§§ 496d, subd. (a), 666.5; counts 2 & 4, both felonies), and resisting, obstructing, or delaying a peace officer or emergency medical technician (§ 148, subd. (a)(1); count 5, a misdemeanor). The offenses all were alleged to have occurred on May 17. Defendant was further alleged to have served two prior prison terms (§ 667.5,

---

[2]     Unless otherwise specified, all dates are from the year 2016.

3.

subd. (b)), and to have committed the current offenses while released on bail in case 499 (§ 12022.1).

Arraignment on the complaint originally was set for May 20. On that date, the public defender's office was appointed to represent defendant and, at defense request, the arraignment was continued to May 24, so the matter could be heard with defendant's other cases. On May 24, a conflict was declared, the public defender's office was relieved, and conflict counsel was appointed for defendant. Defendant was then arraigned, and entered pleas of not guilty to all charges and denied all special allegations.

The preliminary hearings in both cases subsequently were continued multiple times, primarily at defense request. The preliminary hearing in case 119 eventually took place on November 16 before a magistrate. Defendant was held to answer, and arraignment was set for December 1. The preliminary hearing in case 499 was initially set for November 16, but was continued because of witness availability issues. That hearing took place on November 22 before a magistrate. Defendant again was held to answer, and arraignment was set for the same time and department as case 119.

On November 29, the People attempted to file with the clerk's office an information bearing both case numbers, with case 119 designated "Lead." The information alleged most of the charges and enhancements that were contained in the original complaints, with counts 1 through 4 consisting of the charges from case 499, and counts 5 through 7 consisting of the charges from case 119. The pleading apparently was rejected, as the file stamp bearing the date of November 29 was crossed out by hand and initialed. The information was then filed on December 1. Handprinted above "INFORMATION" was the word "CONSOLIDATED."[3]

---

[3]    On appeal, the People represent that after the clerk's office rejected the information, the information was presented to the court clerk/judicial assistant in the arraignment department, who wrote "CONSOLIDATED" and accepted and filed the information. We will assume, for sake of discussion, that this representation is accurate. We cannot, however, discern whether the signature of the deputy clerk who filed the

4.

Appearing on behalf of defendant on December 1, were conflict counsel in case 119, and the public defender's office in case 499.[4] The deputy public defender objected to consolidation of the felony cases into a single information and stated she would be filing a severance motion. She also requested a one-week continuance to make a conflict determination. Arraignment was continued for one week.

At the continued hearing on December 8, conflict counsel objected to the People having combined two cases, one in which conflict counsel represented defendant, and the other in which defendant was represented by the public defender's office. Counsel stated she did not want to arraign defendant without lodging an objection to the cases being put together. The arraignment judge asked if she was filing a demurrer or what she was

information is that of the arraignment judge's court clerk/judicial assistant. Other than that signature, the record before us contains no information concerning how the information came to be filed or who wrote "CONSOLIDATED" on it. Nor, for that matter, does the record contain information supporting defendant's assertion the clerk's office initially refused to file the information because "[t]he face sheet and caption of the document looked off . . . ."

The dissent points to the superior court dockets for cases 119 and 499, and claims they "reflect[] . . . the clerk's office rejected the information and sent it to the court department where separate arraignments in both cases were scheduled, so that the matter of 'consolidation' could be 'addressed' by the court." (*Dissent*, p. 1, fn. 1, *post*.) However, the record on appeal contains no docket entry in either case for November 29, the date rejection allegedly occurred. The clerk's minutes for December 1 simply show arraignment was continued, at defense request, in both cases. "[O]ur review on a direct appeal is limited to the appellate record. [Citations.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1183.) Although the importance of those dockets to the determination of this action is doubtful, we point out that, while we may take judicial notice under Evidence Code sections 452 and 459 of any trial court records (*dissent*, p. 1, *post*), we have not been asked to do so. To the extent our dissenting colleague purports to do so unilaterally, the parties have not been afforded the procedural protections contained in Evidence Code sections 455 and 459, subdivisions (c) and (d). (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2; *People v. Tobin* (1990) 219 Cal.App.3d 634, 644, fn. 3 (dis. opn. of White, P.J.).)

[4] It appears defendant also had two other cases pending, in one he was represented by the public defender's office and in the other by conflict counsel. Those cases are not before us.

going to do. He noted there were only certain things she could do at that stage of the proceedings. The deputy public defender stated that because of the way in which the information had been filed, her office needed to "conflict off" the case. She explained that the information now included a case in which her office had already declared a conflict, thereby creating a conflict for the entire "new" case.

Conflict counsel asked whether the arraignment judge was willing to hear her objection to consolidation at that hearing. The People took the position that if defense counsel wished to file a motion objecting to the single information being filed, the People would agree to continue the arraignment to afford that opportunity, but an oral objection was not legally appropriate. When conflict counsel pointed out that the People never filed a motion to consolidate, the arraignment judge responded: "That's correct but there is a Penal Code Section and I'm not pretending to make a ruling here because frankly I don't know. There is a Penal Code Section that allows the People to file the pleadings prior to arraignment without leave of court, is there not?" The judge agreed to hear the motion that day if counsel so desired, but the matter ultimately was continued for another week.

At the continued hearing on December 15, conflict counsel cited California Rules of Court, rule 3.350(a)(1)(C) for the proposition a notice of motion to consolidate must be filed in each case sought to be consolidated.[5] She stated she had also reviewed section 1009, permitting an information to be amended without leave of court, but noted an accusation could not be amended so as to charge an offense not shown by the evidence taken at the preliminary hearing. Counsel argued that because there were separate preliminary hearings in separate cases, neither contained evidence demonstrating offenses contained in the other.

---

[5]     All references to rules are to the California Rules of Court.

6.

The arraignment judge asked how, procedurally, counsel intended to get that issue in front of the court at an arraignment hearing, in light of the fact section 1002 only permitted a defendant to enter a demurrer or a plea. The judge stated he was "not unsympathetic with the merits of this situation," but he did not know procedurally how the issue could be gotten in front of the court except by either entering a plea and filing a motion to sever, or by demurring and arguing there was improper joinder under section 954, which in effect was the same thing as a severance motion. Conflict counsel asked the court not to accept the consolidated information as filed, because it was improper. When she was unable to cite authority other than the Rules of Court, the arraignment judge denied the motion to refuse to accept the filing of the information. The public defender's office then declared a conflict as to case 499, and conflict counsel was appointed. Defendant was arraigned on the information, and the judge set a trial date "[o]n case ending 119 and 499 that are filed together in one information . . . ."

Conflict counsel subsequently filed a motion to dismiss, pursuant to section 995. In pertinent part, she requested that the court set aside "the entire Information as filed" on the ground the information was improperly consolidated after separate preliminary hearings in separate cases. Counsel cited section 1009 and rule 3.350, and argued the "consolidat[ion]" of both cases in one information, without moving the court for permission to do so, was in "direct violation" of the statute and the rule. She further argued there was no evidence shown to support counts 1 through 4 at the preliminary hearing in case 119 and, alternatively, no evidence shown to support counts 5 through 7 at the preliminary hearing in case 499.

The People opposed the motion. In pertinent part, they argued section 995 did not grant a defendant the means by which to challenge an improperly consolidated information. The People asserted the offenses charged were all of the same class of crimes, and so met the requirements of section 954.

7.

The motion was heard on January 13, 2017. At the outset of the hearing, the motions judge stated he had two separate case files, one for case 119 and the other for case 499. He further stated he had "done a lot of research" on the topic presented by the defense motion. He asked the prosecutor whether he had any authority for the proposition the People could join two cases, by their own decision to consolidate, without permission of the court. The judge stated he did not believe the law permitted a court to treat two preliminary hearing transcripts as one, just because the People chose to treat two cases as one, and he did not see why a section 995 motion could not be used to address the issue. The prosecutor responded that the People did not seek to consolidate two separate offenses, but rather filed, at the first available opportunity, a charging document that alleged separate offenses as permitted by section 954. He argued the defense had the opportunity to challenge that filing and did not do so, and they could not raise the issue by means of a section 995 motion. The motions judge stated:

> "[W]hat I'm suggesting is not that I can . . . overrule another judge if a judge made a decision to consolidate the cases. What I'm suggesting is that the entire scheme of the code, and the entire process of criminal procedure is that this matter, having been filed as two cases in front of the Court, whether those two cases are joined is a question for the Court, and the D.A. can't make that decision for the Court. The D.A. can file a request to consolidate the matters, and if that's granted the Court can then look in the other file because it's been consolidated, and then find the evidence supporting the charge. I looked through, with great care, the transcript of the proceeding in front of [the judge] at arraignment on the information, and [his] point was you can demurrer [*sic*] or you can enter a plea, and he's correct about that. . . . [D]efense chose not to demurrer [*sic*]. I'm not sure there's a basis for a demurrer, but whether there is or isn't the question is not — [the arraignment judge] did not make an order consolidating the cases. While there are two minute orders that reflect that he did, there is no mention of it in the oral proceedings of the court, and as you know the oral proceedings control over the written proceedings. . . . [The D.A.] gave him an information that consolidated the cases without leave of Court, and the Judge accepted it for filing, which the clerk's office should have done. But the Court, when it accepted those for filing, didn't grant a motion for — to consolidate. The Court didn't consolidate the two actions. The D.A. chose

8.

to do that on their own, and I'm not aware of any authority that says they can do that."

The prosecutor argued there was no motion to consolidate; rather, there was a filing of a charging document "at the first inception of the proceeding of that first criminal offense." The motions judge responded that this was not a different proceeding; there were two proceedings, each of which resulted in a holding order, which in turn gave the People the ability to file an information in each proceeding. He continued:

> "Where do we draw the line on this? I mean, you've got counts that absolutely would be consolidated on a motion. I couldn't imagine anything that would prevent a Court from granting that, but where do we draw the line and turn the issue of the Court's control of its own procedures into just a matter where the D.A. gets to decide how it works? Because that's exactly what you've done here. You've decided that the Court doesn't need to entertain a motion, that defense doesn't get a chance to oppose a motion, that you can just simply file a consolidated information and you've given me no authority for that proposition. I have plenty of authority as to why you can't . . . . This question is not about whether these actions can properly be consolidated, it's not really even about whether they were consolidated. It's at this point about whether in the action, the lead case, the case under which this purported consolidated complaint is filed, is there any evidence in that action of the crimes charged in Counts 1 through . . . 4. . . . And I don't have that information in front of me because the only evidence that those crimes were committed is in some other case. And, yeah, you've got both case files, and, yeah, I can go find the preliminary hearing transcript, but they're not in this case, and they are separate cases. They don't just become one case because the D.A. says they're one case. They become one case if a judge grants a motion to consolidate them."

The motions judge expounded that in case 499, a preliminary hearing was held, and evidence was presented concerning the four counts alleged in that case. In case 119, a preliminary hearing was held, and evidence was presented as to the charges arising in that case. At the preliminary hearing in case 119, no evidence was presented concerning the charges filed in case 499. The judge acknowledged there was "probably plenty of evidence in that preliminary hearing transcript to support those charges," but stated it was a different case. The information before him was filed in case 119, and no evidence of

9.

the charges in case 499 was presented to the magistrate who presided over the preliminary hearing in case 119. The judge observed:

> "The People could have filed an information in each case, asked leave of the Court to consolidate, filed a motion on notice, as it's required by the code, as it's specified in the code. Defense could have opposed it. We have two different lawyers, later that wasn't the case, but they could have come up with whatever argument they could make. They're not properly joined. Well, sure they are. They are all the same kinds of charges. So they would have whatever argument they'd had, and you would have routinely gotten granted a consolidation order, and the two actions would have been consolidated. Then I could look in both preliminary hearing transcripts to find the evidence of all seven counts. But because you didn't do that, and instead took it upon yourself to file in [case 119], seven charges, only two of which are supported by the evidence in that case, you now are facing a 995 that challenges the sufficiency of the evidence in those five counts, and there isn't any cause you didn't put them in the prelim, and you didn't get the actions properly consolidated. It's not a prosecutorial charging decision, it just isn't. The D.A.'s Office may think it is, and you may have done this before and may think you can do it again . . . . But I can tell you this, it's not a prosecutorial charging decision to take two separate criminal actions and join them into one. It just doesn't work that way. This is a question about proper procedure, and the Judiciary's control over the case once it's been filed. . . . It's your . . . decision as to what charges to file in one case, what charges to file in another case, but it is not purely a prosecutorial . . . charging decision, to then say, We're gonna file all those in one case. You can't do it without permission of the Court. That's why we have motions to consolidate. That's why there's a procedure set out in the code. These are two separate actions initiated by the D.A., not one, and the purpose of the 995 is to review the sufficiency of the information on the basis of the record before the Court. And the record before the Court in [case 119] says you got two good charges, and you've got five for which there's no evidence. And now because you chose to go this path, and file a consolidated information instead of filing two separate informations and seeking to consolidate them, you now have failed to timely file an information in that case, and those counts are gonna be dismissed, and it's a dismissal."

The prosecutor argued section 954 permitted separate offenses to be filed in a single charging document. The motions judge countered that the statute said the court could order consolidation when two or more accusatory pleadings were filed, which was

10.

the situation here. He stated: "To make them one you need consent of the Court, and you don't just get a free swing at it just cause we're at the point where we're now arraigning on an information. It doesn't wipe away [section] 954. It doesn't wipe away the Court's control over those two actions. There were two actions, and you don't get to make them one. The Court can make them one on proper noticed motion after the defense has had an opportunity to be heard, but you don't just shortcut the defendant by choosing to say, These should be consolidated. That's a question for the Court, not the D.A." The judge further stated that he was not sure a demurrer would lie, but in any event, it was not the defense's burden to sever cases that were improperly joined or consolidated into one case. Rather, it was the People's job to consolidate the cases by motion, "not by your own decision and just running rough shot [*sic*] over the Court's procedures."

The motions judge afforded counsel additional time for further research, and continued the hearing to January 18, 2017. On that date, the prosecutor took the position the arraignment judge had treated the defense's opposition as a motion to sever and denied that motion, so the matter was not properly reviewable by way of a section 995 motion. The prosecutor also argued the motions judge could not ignore part of the record, since both case numbers were on the information, meaning informations effectively were filed in both cases. He asserted the appropriate remedy for the defense was a severance motion, not an examination in a section 995 proceeding of a partial record.

The motions judge reiterated that he was not overruling any discretionary decision made by the arraignment judge, as the transcripts of the arraignment proceeding showed that judge did not order consolidation of the two actions. The motions judge further reiterated the People never presented a consolidation motion to any judge, and consolidation was a judicial function and not a prosecutorial charging decision. The judge observed that a court could not, in a section 995 proceeding, go outside the record in one case to decide there was evidence in another case that supported the charges. He

11.

concluded that he had an information before him (based on designation of case 119 as the lead case) as to which only counts 5, 6, and 7 were supported by the evidence in the preliminary hearing transcript. Counts 1 through 4 had no factual support in that transcript and so he ordered them dismissed.

The People appealed. (§ 1238, subd. (a)(1); *People v. Alice* (2007) 41 Cal.4th 668, 680.)

## DISCUSSION

The question before us is whether court permission is required for the People to file a single information covering the charges brought in separate felony complaints and as to which defendant was held to answer following separate preliminary hearings. The unitary information was filed and accepted by the arraignment judge, and defendant was arraigned thereon. He did not demur or subsequently move for severance. Instead, he moved to set aside the information pursuant to section 995.

A motion pursuant to section 995 is not the proper means by which to seek redress for asserted improper joinder. That section permits an information to be set aside if, before the filing thereof, the defendant was not legally committed by a magistrate; or if the defendant was committed without reasonable or probable cause. (§ 995, subd. (a)(2).) Although defendant named both grounds in his written motion, it is clear that the manner in which charges are alleged in an information cannot affect the legality of the commitment by the magistrate, since that commitment precedes the creation of an information. Accordingly, defendant necessarily relied on the argument he was committed without reasonable or probable cause either with respect to the counts in case 119 or with respect to the counts in case 499. However, "misjoinder is not one of the grounds upon which the information may be attacked under section 995 of the Penal Code. That objection to the information may be only raised by demurrer (Pen. Code,

12.

§ 1004, subd. 3).” (*People v. Cummings* (1959) 173 Cal.App.2d 721, 730.) Failure to demur constitutes waiver. (§ 1012.)[6]

It is true that a section 995 motion is the proper vehicle by which to attack an information in which one or more counts is not supported by at least some evidence. (See *People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226.) It is also the appropriate means of asserting the information improperly contains charges not set out in the order of commitment, where those offenses were not shown by the evidence at the preliminary hearing or did not arise out of the transaction upon which the commitment was based. (See *People v. Graff* (2009) 170 Cal.App.4th 345, 360-361.) This case could only be maneuvered into that posture, however, by the motions judge choosing to ignore essentially half of the record before him. His doing so constituted an abuse of discretion, particularly in the absence of any authority therefor.[7]

---

[6] There is some uncertainty whether the purported misjoinder in this case could have been reached by way of demurrer. Subdivision 3 of section 1004 permits an accused to demur when it appears upon the face of the accusatory pleading “[t]hat more than one offense is charged, except as provided in Section 954.” A cogent argument can be made that if section 954 required the prosecutor to obtain court permission to file a single information covering two cases, and the prosecutor failed to obtain that permission, it would appear on the face of the information “[t]hat more than one offense [was] charged, except as provided in Section 954.” (§ 1004, subd. 3.) Assuming such was not the case, however, defendant still could have availed himself of a motion to sever. (*People v. Kemp* (1961) 55 Cal.2d 458, 474.)

[7] Discretion is abused when “the ruling in question ‘falls outside the bounds of reason’ *under the applicable law* and the relevant facts [citations].” (*People v. Williams* (1998) 17 Cal.4th 148, 162, italics added.)

We do not suggest the motions judge improperly ignored, overlooked, or overruled any order made by the arraignment judge. (See *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1366.) Although the clerk’s minutes of the December 15 hearing reflect that the arraignment judge ordered case 199 “consolidated” with case 499, the reporter’s transcript shows the judge simply denied the defense motion to refuse to accept the filing of the information and, following defendant’s arraignment, proceeded to set a trial date for cases 119 and 499 “that are filed together in one information.” It is clear the arraignment judge did not grant consolidation, but rather merely accepted what had already been administratively deemed a “CONSOLIDATED” information. (See *People*

13.

Additionally, the motions judge's reasoning behind his granting of the section 995 motion was error.[8]

The primary question presented — whether the People are required to obtain court permission before filing a unitary information as their first pleading in superior court — is one of statutory interpretation, which we consider de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71; *People v. Cunningham* (2001) 25 Cal.4th 926, 984; *People v. Alvarez* (1996) 14 Cal.4th 155, 188.) Likewise, to the extent the motions judge was interpreting the meaning of section 954, we independently review his determination, and we reject his interpretation of that statute's requirements. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1067.)

Section 954 has two parts that concern us. The first provides: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses

---

*v. Smith* (1983) 33 Cal.3d 596, 599; *People v. Irvin* (1991) 230 Cal.App.3d 180, 192, fn. 9.)

The fact the clerk/judicial assistant referred to the cases as "consolidated" for purposes of her administrative duties (which, we assume, include ensuring court records are accurate and complete with respect to all court cases, whatever their ultimate disposition) does not establish them as having been consolidated within the meaning of the applicable statutes. It also does not control whether the court's permission to consolidate, in the legal sense, is required. That said, nothing in this opinion is intended to interfere with the clerk's performance of his or her administrative duties, or how he or she designates a unitary information in order to carry out those duties. Nor should it be read as suggesting it is the function or responsibility of the clerk/judicial assistant to determine whether a unitary information, covering charges in two cases, is proper. "The presentation of an information by the district attorney for filing, and the reception of this information and the placing of its file-mark thereon by the clerk of the court, are all purely ministerial acts. [Citations.]" (*People v. Helm* (1907) 152 Cal. 532, 548, disapproved on another ground in *People v. Edwards* (1912) 163 Cal. 752, 756.)

[8] Because we reach the substantive issue on its merits, we need not address defendant's claim that if defense counsel somehow forfeited or waived the matter by framing the issue as a section 995 motion or failing to demur, defendant was denied the effective assistance of counsel.

14.

of the same class of crimes or offenses, under separate counts . . . ." Taking only this portion of the statute into account, joinder here "was proper because the counts were all of the same class. 'Offenses of the same class are offenses which possess common characteristics or attributes.' [Citations.]" (*People v. Landry* (2016) 2 Cal.5th 52, 76.) Defendant does not appear to dispute this.

The second pertinent portion of section 954 is the second half of the sentence quoted *ante*. It provides: ". . . and if two or more accusatory pleadings are filed in such cases *in the same court*, the court may order them to be consolidated." (Italics added.)

Prior to 1998, the judicial power of California was vested in the Supreme Court, Courts of Appeal, superior courts, and municipal courts.[9] (Cal. Const., art. VI, former § 1; see § 691, former subd. (a) [defining "inferior courts" as including municipal courts and justices' courts].) It is logical to conclude that, at such time, the separation of courts was such that section 954 meant judicial permission was required to consolidate two or more accusatory pleadings filed in municipal court, or two or more accusatory pleadings filed in superior court. Permission would *not* have been required to do what the People did in the present case: file a single information as their first pleading in superior court (§ 949), covering charges as to which separate complaints were filed, and the defendant was separately held to answer, in municipal court. This is so because superior court and municipal court were not the same court.

In 1998, municipal and superior courts were consolidated by constitutional amendment, enacted by initiative measure (Prop. 220) that was approved June 2, 1998, and went into effect the next day. (See Cal. Const., art. II, § 10, subd. (a).) Proposition 220 " 'had the effect of empowering each county to abolish the municipal court in that county by merging its judges and resources into the superior court.'

_____

[9]    Justice courts were eliminated by initiative measure (Prop. 191) approved November 8, 1994, and operative January 1, 1995.

15.

[Citation.]" (*People v. Richardson* (2007) 156 Cal.App.4th 574, 586 (*Richardson*); see Voter Information Guide, Primary Elec. (June 2, 1998) analysis of Prop. 220 by Legis. Analyst, at <http://vigarchive.sos.ca.gov/1998/primary/propositions/220analysis.htm> [as of Oct. 19, 2018].)  Article VI, section 1 of the California Constitution now provides that the judicial power of the state is vested in the Supreme Court, Courts of Appeal, and superior courts, while section 4 of article VI provides that "[i]n each county there is a superior court of one or more judges."

In response to the passage of Proposition 220, the Legislature enacted numerous statutory changes to accommodate unification.  (Stats. 1998, ch. 931; see, e.g., §§ 682, 691, 737, 806, 949.)  Section 954 was unaffected, however, and has not been amended since 1951.  (See Historical and Statutory Notes, 50 pt. 3 West's Ann. Pen. Code (2008 ed.) foll. § 954, p. 163.)  We must determine whether court unification resulted in a change in meaning as to section 954, despite the absence of an explicit amendment.

In interpreting a statute, " 'our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.'  [Citation.]  'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.'  [Citations.]" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)  "To that end, we generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and . . . '[a] construction making some words surplusage is to be avoided.'  [Citation.]  [¶]  But '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'  [Citation.]" (*People v. Valencia* (2017) 3 Cal.5th 347, 357-358; see *People v. Rizo* (2000) 22 Cal.4th 681, 685 [same principles apply to interpretation of voter initiative].)

16.

The plain meaning controls if the statutory language is unambiguous. (*People v. Cornett*, *supra*, 53 Cal.4th at p. 1265.) Language that appears unambiguous on its face may, however, contain a latent ambiguity. (*People v. Garrett* (2001) 92 Cal.App.4th 1417, 1422.) Where the statutory language reasonably may be given more than one interpretation, we may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, the statutory scheme of which the statute is a part, and the consequences that will flow from a particular interpretation. (*People v. Valencia*, *supra*, 3 Cal.5th at p. 358; *People v. Cornett*, *supra*, 53 Cal.4th at p. 1265.) Ambiguities are not to be interpreted in the defendant's favor where such an interpretation would provide an absurd result or a result that is inconsistent with the apparent legislative intent. (*People v. Lamb* (1999) 76 Cal.App.4th 664, 678.) The enacting body is presumed to have been aware of existing law at the time of an enactment (*In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11; *Juan G. v. Superior Court* (2012) 209 Cal.App.4th 1480, 1494), and repeal by implication is disfavored (*Juan G.*, *supra*, at p. 1494).

Court unification has given rise to an ambiguity in section 954: Does the phrase "in the same court" mean in the single, unified superior court, or does the phrase retain its original, preunification meaning? If the former, then the People were required to obtain a court order allowing consolidation of cases 119 and 499. If the latter, the unitary information was proper.

We conclude the phrase retains its preunification meaning. To construe it otherwise would be to render the phrase surplusage, make section 949 virtually meaningless, and conflict with other statutes related to pleadings and pretrial proceedings.

"Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information." (Cal. Const., art. I, § 14.) "An information is an accusatory pleading charging a felony, subscribed by the district

17.

attorney, and filed in superior court. [Citations.] Before the prosecution may file an information in superior court charging a felony, 'there must be a preliminary examination of the case against the defendant and an order holding him to answer . . . .' [Citation.]" (*People v. Martinez* (2000) 22 Cal.4th 750, 758.) "The principal purpose of the information is to notify the accused of the charges he or she is to meet at trial. [Citation.]" (*People v. Maldonado* (2009) 172 Cal.App.4th 89, 94.)

"Prior to trial court unification, 'felony proceedings commenced in the municipal court with the filing of a complaint and the holding of a preliminary examination before the magistrate. [Citations.] If the magistrate concluded there was sufficient evidence to hold the defendant to answer, the prosecution filed an information in the superior court within 15 days, charging [the] defendant with the felony offense. [Citations.] After court unification, "the proceedings in the early stages of a felony prosecution that formerly were held in municipal court now are held in superior court, but the basic procedural steps — the filing of a complaint before a magistrate, the holding of a preliminary examination before a magistrate, and the filing of an information and arraignment on the information before a superior court judge — remain the same." [Citation.]' [Citation.]" (*People v. Maldonado*, *supra*, 172 Cal.App.4th at pp. 94-95, fn. omitted; accord, *People v. Crayton* (2002) 28 Cal.4th 346, 359-360; *People v. Dominguez* (2008) 166 Cal.App.4th 858, 865.)

The Legislature's revision of various statutes to accommodate court unification was "intended generally to preserve existing procedures for criminal cases . . . ." (Cal. Law Revision Com. com., 50 pt. 1 West's Ann. Pen. Code (2008 ed.) foll. § 691, p. 132.) It would be illogical for the Legislature to intend to preserve existing procedures by revising statutes to accommodate unification on the one hand, while at the same time intending to change existing procedures by *not* revising section 954 on the other hand.

The People cite us to *Richardson*, *supra*, 156 Cal.App.4th 574, which addressed the question whether a defendant who pled guilty before a magistrate, after the magistrate

18.

denied his or her suppression motion at the preliminary hearing, and whose case was then certified to the superior court for pronouncement of judgment pursuant to section 859a, could thereafter seek appellate review of the magistrate's ruling on the search and seizure issue. (*Richardson*, *supra*, at pp. 580-581.) Prior to court unification, the California Supreme Court held in *People v. Lilienthal* (1978) 22 Cal.3d 891, 896-897 (*Lilienthal*), that where a defendant moves to suppress evidence at the preliminary hearing, he or she must again raise the issue of the validity of the search in superior court in order to preserve the issue for appeal. In *People v. Garrido* (2005) 127 Cal.App.4th 359, 364, the court held unification did not abrogate this rule, "because the California Constitution, article VI, section 23, subdivision (c), which created the unified court system, specifically provides for superior court review of preliminary hearing suppression motions. [Citation.] The rationale for continuing to apply *Lilienthal* after unification is based on the distinct roles assigned to the magistrate and the superior court. [Citation.]"[10] The *Richardson* court agreed with *Garrido*. (*Richardson*, *supra*, 156 Cal.App.4th at p. 581.) It concluded: "[T]he consensus is that the *Lilienthal* rule continues to apply even in the wake of trial court unification because that rule never rested on the distinction between the municipal court and the superior court; rather, it rests on the distinction between magistrates and superior court judges — a distinction that remains valid even following unification." (*Id*. at p. 589.)

Richardson* is not particularly helpful, because interpretation of section 954 does not rest on the distinction between magistrates and superior court judges. We find

**10** California Constitution, article VI, former section 23, subdivision (c) stated: "Except as provided by statute to the contrary, in any county in which the superior and municipal courts become unified, the following shall occur automatically in each preexisting superior and municipal court: [¶] . . . [¶] (7) Penal Code procedures that necessitate superior court review of, or action based on, a ruling or order by a municipal court judge shall be performed by a superior court judge other than the judge who originally made the ruling or order." This section was repealed, by its own terms, effective January 1, 2007. (Cal. Const., art. VI, former § 23, subd. (d).)

19.

*Lempert v. Superior Court* (2003) 112 Cal.App.4th 1161 (*Lempert*) to be more instructive.

In *Lempert*, the defendant was charged by felony complaint and retained counsel to represent him through the preliminary hearing, but not for trial. The defendant was held to answer. At arraignment on the information, the attorney advised the court that the matter should be referred to the public defender's office. The court refused to allow the attorney to withdraw because the attorney had previously made a " 'general appearance,' " and the court required him to file a formal motion to withdraw. After counsel filed the motion, it was denied. The attorney then sought writ review of the superior court's order denying the motion to withdraw. (*Lempert, supra*, 112 Cal.App.4th at pp. 1164-1165.)

The appellate court issued a peremptory writ. It concluded the superior court erred by requiring a formal motion to withdraw at the particular stage of the proceedings, and it abused its discretion by denying the motion. (*Lempert, supra*, 112 Cal.App.4th at p. 1165.) The Court of Appeal explained:

> "A felony prosecution that is commenced by the filing of a complaint has two distinct pretrial phases. In the first phase, formerly conducted in the municipal court, the prosecution commences with the filing of the felony complaint. (§ 806.) The defendant is brought before a magistrate and is informed of the right to counsel. (§ 859.) If the defendant desires counsel and is unable to employ counsel, counsel is appointed. (*Ibid.*) The defendant then appears before the magistrate for arraignment, and, if the defendant pleads not guilty, the magistrate sets the case for a preliminary examination. (§ 859b.) If the magistrate finds sufficient cause to believe the defendant is guilty, then the defendant is held to answer, and the district attorney files an information in the superior court. (§§ 872, 739.)

> "The second pretrial phase begins with the filing of the information in the superior court. The information is considered the first pleading filed by the People in a felony case in the superior court. (§ 949.) After the filing of the information, the defendant is arraigned on the information before a superior court judge. (§ 976.) In the interim, counsel who

represented the defendant at the preliminary examination continues to represent the defendant 'until the date set for arraignment on the information unless relieved by the court upon the substitution of other counsel or for cause.' (§ 987.1[.]) If the defendant appears for arraignment on the information without counsel, the defendant is informed of the right to counsel. (§ 987.) If the defendant desires counsel and is unable to employ counsel, the court must appoint counsel to represent the defendant. (*Ibid*.)

"Notwithstanding the court's comment 'we now have only one court,' under the statutory scheme just laid out, *that single court has two divisions corresponding to the former municipal and superior courts. The voluntary unification of the municipal and superior courts was not intended to fundamentally alter preexisting criminal procedure*. Rather, the objective of the statutory revisions implementing trial court unification was 'to preserve existing rights and procedures despite unification, with no disparity of treatment between a party appearing in municipal court and a similarly situated party appearing in superior court as a result of unification of the municipal and superior courts in a county.' [Citation.] In order to distinguish between criminal causes that were within the original trial jurisdiction of superior and municipal courts, the criminal procedure statutes were revised 'to accommodate the possibility of unification by replacing references to matters within the original jurisdiction of the superior court with references to felonies, and by replacing references to matters within the original jurisdiction of the municipal court with references to misdemeanors and infractions.' [Citation.] *Although the statutory references have changed, the historical division within the trial court remains*." (*Lempert*, *supra*, 112 Cal.App.4th at pp. 1168-1169, italics added, fns. omitted.)

Because the historical division of municipal and superior courts remains the same postunification as it was preunification (at least insofar as criminal procedure is concerned), it stands to reason that when section 954 refers to two or more accusatory pleadings being filed "in the same court," it is referring to two or more such pleadings being filed at the stage of proceedings historically conducted in municipal court *or* at the stage historically conducted in superior court. Thus, while court permission is required to consolidate two complaints or two informations, it is *not* required to incorporate two complaints into a single information where that information is the People's first pleading

21.

at the superior court stage of proceedings.[11]  Any other interpretation, based on the existence of a single court following unification, would read "in the same court" out of the statute as being mere surplusage and unnecessary.  Additionally, such a literal reading of section 954 would afford judges the discretion to consolidate charges in a complaint with charges in an information, since both documents would be accusatory pleadings filed in the same court.  Such a procedure would directly conflict with statutes such as section 995 (requiring the defendant to be legally committed by a magistrate with reasonable or probable cause) and section 1009 (requiring the charged offense to be shown by evidence taken at a preliminary examination).[12]

This conclusion by no means nullifies section 954, as defendant asserted at oral argument.  Section 739 requires an information to be filed within 15 days after a defendant is committed (held to answer) by a magistrate following a preliminary hearing.  (See § 872.)  Where separate complaints are filed, separate preliminary hearings are held, and separate commitment orders are made sufficiently far apart in time that section 739's requirement cannot be met, as to all charges, by the filing of a unitary information,

---

**11**     Reliance on rule 3.350, as defendant did in the trial court, is unavailing.  Rule 3.350 is contained in title 3 of the California Rules of Court.  Unless otherwise provided by a statute or rule in the Rules of Court, those rules apply *only* to civil cases.  (Rule 3.10.)  We have been unable to find any authority for the proposition rule 3.350 applies to criminal cases, and title 4 of the California Rules of Court — which *does* apply to criminal cases (rule 4.2) — contains no corresponding provision.

**12**     We reject the dissent's assertion that under the unambiguous language and plain meaning of section 954, consolidation is the province solely of the court.  (*Dissent*, p. 19, *post*.)  We fail to see how the language or "plain meaning" of section 954 requires court permission for consolidation of cases *under the procedural posture presented here* — where two or more accusatory pleadings have *not* been filed *in the same court* in the cases at issue — when the language of the statute neither expressly states nor implies such a requirement.  The cases cited by the dissent for the proposition section 954 contemplates consolidation *only* after informations have been filed and cases transferred to superior court and *only* by court order (dissent, p. 19, *post*) are not on point procedurally and so do not persuade us otherwise.

22.

multiple informations will be filed.  If the People desire to consolidate them, they will need to seek the court's permission to do so, pursuant to section 954.  (See, e.g., *Belton v. Superior Court* (1993) 19 Cal.App.4th 1279, 1283.)  In the present case, defendant was held to answer on both complaints sufficiently close in time that the People were able to file a unitary information covering both cases without violating section 739.**13**

---

**13**     The dissent chides us for "diverg[ing] sharply from" and going beyond the People's arguments.  (*Dissent*, p. 10, *post*.)  The interpretation of statutes is a question of law as to which we exercise our independent judgment.  (*Association of California Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 389-390.)  Just as we are not bound by the motions judge's statutory interpretation, neither are we bound by the pronouncements or views of the parties on the subject.

We reject any suggestion, whether made by the People or by the dissent, that section 739 has preeminence over section 954.  As we previously have observed, we are required to harmonize statutes to the extent possible.  (*People v. Valencia*, *supra*, 3 Cal.5th at p. 357.)  In our view, sections 739 and 954 can reasonably be harmonized.

Section 739 reads:  "When a defendant has been examined and committed . . . , it shall be the duty of the district attorney . . . to *file* in the superior court . . . within 15 days after the commitment, *an information* against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed. . . ."  (Italics added.)  With respect to the Legislature's grammatical choices, "[u]se of the indefinite article[] . . . 'an' signals a general reference, while use of the definite article 'the' . . . refers to a specific . . . thing.  [Citation.]"  (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1396-1397.)  We view the italicized portion of section 739 as supporting the inference the Legislature was referring to informations in a broad sense (assuming valid holding orders).  The phrase "an information" contains no inference the Legislature was referring to a specific single information limited to a specific preliminary hearing and holding order — that is, was requiring a one-to-one correlation between the information and a particular preliminary hearing and related holding order — and section 739 contains no words of exclusivity.

The dissent points to section 739's use of the word "the" to qualify "commitment," "order of commitment," and "magistrate."  (*Dissent*, p. 15, *post*.)  While "the" is a specific rather than a general reference, this does not change our conclusion, since, when words are used in the Penal Code, "the singular number includes the plural, and the plural the singular . . . ."  (§ 7.)

The dissent appears perplexed concerning how it can be determined, under our interpretation of section 739, when the 15-day window for filing a unitary information

23.

Nor does our reading of section 954 result in unfairness to defendant, as he claims. "The law favors the joinder of counts because such a course of action promotes efficiency. [Citation.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 37.) If defendant believed he was prejudiced by the fact all counts were contained in a single information, he could have moved to sever counts. "[A] trial court has discretion to order that properly joined charges be tried separately. [Citations.]" (*Ibid.*) In exercising that discretion, "the court weighs 'the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial. [Citation.]' " (*Ibid.*) That the burden on a severance motion rests on the defendant, while the burden on a consolidation motion rests with the People, does not result in unfairness to either side.

In granting a portion of the section 995 motion because of what he perceived as a violation of statutory procedure, the motions judge relied in part on the court's inherent authority and control over its own procedures. Defendant now argues he did so properly. We disagree.

Article III, section 3 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." "It is well settled that the prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and

opens and closes, and how the timeliness of such an information can be assessed. (*Dissent*, p. 16, *post*.) Clearly, to comport with section 739, the 15-day time limit must be met as to *all* charges contained in the unitary information, whether those offenses were named in orders of commitment or were shown by evidence at preliminary hearings. Section 739 precludes the district attorney from taking longer than 15 days with respect to any case incorporated in the unified information, but does not preclude the district attorney from acting in less than 15 days.

We agree with the dissent that 15 days is a relatively short window. We disagree that this suggests the Legislature intended a separate information to be filed in each case. (*Dissent*, pp. 15-16, *post*.) What it does suggest is that because of the short timeframe, the filing of a separate information in each case will be the more common procedure.

24.

what charges to bring.  [Citations.]"  (*People v. Birks* (1998) 19 Cal.4th 108, 134; see *United States v. Batchelder* (1979) 442 U.S. 114, 124.)  "Judges must be as vigilant to preserve from judicial encroachment those powers constitutionally committed to the executive as they are to preserve their own constitutional powers from infringement by the coordinate branches of government."  (*People v. Superior Court (Greer)* (1977) 19 Cal.3d 255, 262 (*Greer*), superseded by statute on another ground as stated in *People v. Conner* (1983) 34 Cal.3d 141, 147.)  Thus, courts generally may not review, for abuse of prosecutorial discretion, a prosecutor's decision as to the type and number of offenses to charge.  (See *People v. Birks*, *supra*, 19 Cal.4th at p. 134; *People v. Cortes* (1999) 71 Cal.App.4th 62, 79.)

It is true the California Supreme Court has said that " '[w]hen the decision to prosecute has been made, the process which leads to acquittal or sentencing is fundamentally judicial in nature.' [Citations.]"  (*Greer*, *supra*, 19 Cal.3d at p. 263.)  That court has also said that " 'when the jurisdiction of a court has been properly invoked by the filing of a criminal charge, the disposition of that charge becomes a judicial responsibility.' . . .  Thereupon the discretion of the executive — as that of any party to the proceeding — becomes subject to the supervision of the trial court."  (*Id*. at p. 265, citation omitted.)  Such pronouncements, however, generally concerned "only the established judicial power to *dispose* of charges and sentencing allegations the prosecution *has* chosen to submit."  (*People v. Birks*, *supra*, 19 Cal.4th at p. 135.)  Nevertheless, we will assume, for the sake of our analysis, that once a prosecutor has decided to prosecute an individual on specific charges, judicial supervision over the form of pleading in which those charges are brought does not run afoul of the doctrine of separation of powers.

" 'All courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice.  The inherent powers of courts are derived from article VI, section 1 of the California Constitution and are not dependent on statute.

25.

[Citations.]  These powers entitle courts to " '. . . adopt any suitable method of practice, both in ordinary actions and special proceedings, *if the procedure is not specified by statute* or by rules adopted by the Judicial Council.' [Citation.]" [Citation.]  Thus, a trial court has the inherent authority to create a new form of procedure in a particular case, where justice demands it.  [Citations.]  " 'The . . . power arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function.' [Citation.]" [Citation.]' " (*Swarthout v. Superior Court* (2012) 208 Cal.App.4th 701, 708-709, italics added.)

A court is authorized, however, only to act within the bounds of the law.  It does not have inherent authority to prohibit what the law permits, based on a misunderstanding of the law or its own view as to what the law should be.

"[J]oint trial has long been prescribed — and broadly allowed — by the Legislature's enactment of section 954.  The purpose underlying this statute is clear: joint trial 'ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.' [Citation.]" (*People v. Soper* (2009) 45 Cal.4th 759, 771-772.)  To this end, the California Constitution "shall not be construed by the courts to prohibit the joining of criminal cases as prescribed by the Legislature or by the people through the initiative process." (Cal. Const., art. I, § 30, subd. (a).)  As we have explained, section 954 permitted the People to file, as their first pleading in superior court, a unitary information containing charges alleged, and as to which defendant was held to answer, in separate cases.  This being the case, the motions judge possessed no authority — inherent or otherwise — to partially dismiss those charges based on a misperception of the law.**14**

---

**14**     *People v. Silva* (1965) 236 Cal.App.2d 453 does not assist defendant or the motion judge's position.  In that case, the prosecutor's motion to consolidate charges in two separate cases was denied.  The prosecutor then moved to dismiss the two separate informations.  That motion was granted, after which the defendant immediately was rearrested on a two-count complaint that contained the identical charges previously set

26.

To summarize, where joinder of charges is proper under section 954, that statute permits the People to file, as their first pleading in superior court (§ 949), a unitary information covering charges that were the subject of complaints, preliminary hearings, and commitment orders in separate cases. The motions judge erred by ruling otherwise.

## DISPOSITION

The order granting the motion to set aside counts 1 through 4 of the information is reversed. The matter is remanded to the superior court for further proceedings.

_____
DETJEN, Acting P.J.

I CONCUR:


_____
FRANSON, J.

---

forth in the two separate informations. (*Id*. at pp. 454-455.) The appellate court stated: "[A]lthough we recognize the validity of the dismissals of the earlier informations, this is not to say that we sanction their use for the purpose of evading *a prior ruling of the court* or that we find the courts without remedies to correct such an abuse of process." (*Id*. at p. 456, italics added.) The court found an order to sever, pursuant to section 954, to be "[a]n appropriate remedy to prevent the prosecutor from profiting by this manipulation of process . . . ." (*People v. Silva*, *supra*, at p. 456.)

In the present case, the prosecutor evaded no ruling of any court. That he may have gotten the unitary information filed by taking it to a second clerk/judicial assistant after it was refused by the first clerk, shows no manipulation: The original clerk to whom the information was presented should have accepted it for filing, as the motions judge himself recognized.

The dissent makes much of the confusion that it says arose as a result of the filing of a unified information, and it conjures up ominous consequences it speculates may result from our holding. In our view, the dissent overstates both, as did defendant in his briefing in this court and at oral argument.

27.

SMITH, J., Dissenting.

I respectfully dissent from the majority opinion and would affirm the trial court.

This appeal arises from an unusual situation. The District Attorney of Fresno County (District Attorney) filed in the trial court an information encompassing counts from two criminal actions independently initiated against defendant Cody Wade Henson (*People v. Henson* (Super. Ct. Fresno County, 2017, No. F16903119); *People v. Henson* (Super. Ct. Fresno County, 2016, No. F16901499)). Each case proceeded separately to preliminary examination and a separate commitment order was issued in each. Thereafter, the District Attorney alleged charges from both cases in a single information (a so-called unified or unitary information): counts 1-4 were drawn from the commitment order in case No. F16901499 (499) and counts 5-7 were drawn from the commitment order in case No. F16903119 (119). The District Attorney listed the case numbers of both the underlying cases on the purported unified information, but unilaterally designated 119 as the "Lead" case. This purported unified information was presented to the clerk's office for filing on November 29, 2016, but, as reflected in the dockets of both the underlying cases, 119 and 499, the clerk's office rejected the information and sent it to the court department where separate arraignments in both cases were scheduled, so that the matter of "consolidation" could be "addressed" by the court.[1]

It appears the judicial assistant for the relevant court department filed the purported unified information on December 1, 2016, at the time of the scheduled arraignments, as reflected by the file stamp on the information. Along with the file stamp, the word "CONSOLIDATED" was written by hand on the information's caption. After significant confusion, Henson was finally arraigned on this "consolidated"

---

**1** See Fresno County Superior Court docket for cases 119 and 499. (The majority disputes the citation to the trial court dockets in cases 119 and 499 as being outside the record on appeal. (Maj. opn. *ante*, at p. 4, fn. 3.) However, under Evidence Code sections 452 and 459, this court may take judicial notice of any trial court records.)

information on December 15, 2016.  On the same date, the docket for 119 was updated to reflect that 119 and 499 were consolidated by court order, with 119 designated as the "lead" case.[2]  The docket of the other case, 499, likewise reflected that it had been consolidated with 119 per court order on December 15, 2016, whereupon "[a]ll proceedings will be recorded in [case] 119."[3]

Henson subsequently brought a motion pursuant to Penal Code[4] section 995 to dismiss the unified information as filed.  In the motion, Henson contended:

> "After the preliminary hearings held separately in F-119 and F-499, the [District Attorney] consolidated both cases on one Information, without moving the court to do so.  This is in direct violation of the California Rules of Court and the California Penal Code and despite the fact that two separate appointed attorneys were handling the respective cases.  Defense counsel was not noticed, nor given an opportunity to object at a consolidation hearing.  Rather, defense counsel was put on the defensive at the held to answer arraignment, and attempted to make an objection to the consolidated Information.  [¶]  There is no new case number for these consolidated cases; rather, the People are using *both* former case numbers on the new Information.  Further, there was no evidence shown to support Counts 1-4 in the preliminary hearing in F-119.  Alternatively, there was no evidence shown to support Counts 5-7 in the preliminary hearing in F-499.  For these reasons, defense respectfully requests this court dismiss the Information as filed."

The motions judge determined that the court was required to evaluate the information with reference to the record of the "lead" case alone because, despite the docket notations, there was no court order consolidating the cases, nor had the District Attorney moved to consolidate the cases.[5]  The court reasoned that filing the information

---

[2]      See Fresno County Superior Court docket for case 119.

[3]      See Fresno County Superior Court docket for case 499.

[4]      Subsequent statutory references are to the Penal Code unless otherwise specified.

[5]      At the hearing on the defense's section 995 motion, the District Attorney stated, with regard to the unified information:  "It was not a motion to consolidate, Your Honor." The majority acknowledges, furthermore, that the arraignment court did not order the relevant cases to be consolidated.

2

by itself did not consolidate the respective actions in which the charges arose, in the legal sense of merging the complete records of the actions so that they become one action going backward as well as forward to trial and judgment. The court noted that consolidation is accomplished by order of the court upon the filing of a motion by either party and is by no means a prosecutorial charging decision. (See § 954.) It therefore concluded that the District Attorney could not unilaterally consolidate separate criminal actions simply by including charges from these actions (here, 119 and 499) in a single information and filing the latter.[6]

Having determined that the cases at issue were not in fact consolidated—because simply filing a purported unified information could not accomplish that—the court evaluated the information, for purposes of Henson's section 995 motion, against the discrete record of the case in which the unified information was filed, i.e., case 119. Since there was no support for counts 1-4 of the unified information in the commitment order or preliminary hearing transcript contained in case 119, the court dismissed these counts for a lack of evidence that the defendant was legally committed by a magistrate or committed with probable cause. (See § 995, subd. (a)(2)(A), (B).)

The District Attorney filed the instant appeal and the majority reverses. For the reasons given below, I would affirm the trial court.

## I. *Historical Overview: The 1951 Amendments to the Penal Code (Senate Bill No. 543)*

As the District Attorney acknowledges, the two provisions at the heart of this case are sections 739 and 954. We must interpret these provisions to decide whether the

---

[6] Black's Law Dictionary defines "Consolidation of actions" as follows: "The act or process of uniting several actions into one trial and judgment, by order of a court, where all the actions are between the same parties, pending in the same court, and involving substantially the same subject-matter, issues and defenses." (Black's Law Dict. (4th ed. 1951) p. 382, col. 1 [the present version of § 954, the statute permitting consolidation of cases, dates to 1951].)

3

District Attorney's actions in this matter comport with them, and in turn, whether the motions judge properly dismissed counts 1-4 of the information. Sections 739 and 954 were last addressed by the Legislature in 1951, when a comprehensive overhaul of the procedural provisions of the Penal Code was implemented by Senate Bill No. 543 (1951 Reg. Sess. (Senate Bill 543)), in view of the division of the state's court system into municipal and superior courts.[7] As noted in the Legislative Counsel's "Report on Senate Bill No. 543," dated July 12, 1951, "[t]he declared purpose of this bill [was] to make all the procedural provisions of the Penal Code applicable to all proceedings in all courts, so far as it is possible and practicable (Report of Senate Interim Judiciary Committee, p. 25, transmitted June 19, 1951)." (Legis. Counsel, Rep. on Sen. Bill No. 543 (1951 Reg. Sess.) July 12, 1951, p. 12.) Accordingly, Senate Bill 543 restructured and amended scores of sections in Part 2 ("Of Criminal Procedure") of the Penal Code. (Stats. 1951, ch. 1674, §§ 1-161, pp. 3829-3860.) It added section 739 (formerly § 809) and amended section 954. In light of the comprehensive and integrated nature of the changes effected by Senate Bill 543, sections 739 and 954 must be understood in the context of the purposes of Senate Bill 543 and with reference to the conditions, including the court structure, that existed when it was enacted.

Given the establishment of the two-tiered structure of municipal and superior courts, Senate Bill 543 made several changes to rationalize the criminal procedure provisions of the Penal Code to accommodate and facilitate the functions of the municipal courts. In 1951, the Penal Code already specified that "[e]ach municipal court shall have jurisdiction in all criminal cases amounting to misdemeanor." (Former

---

[7]  Municipal courts were authorized by 1924 amendments to article VI of the California Constitution and the 1925 Municipal Court Act. (Stats. 1925, p. 648.) The first municipal court was established in 1925 in Long Beach, followed by one in Los Angeles in 1925, and in San Francisco in 1930. (See Ames, *The Origin and Jurisdiction of the Municipal Courts in California* (1933) 21 Cal. L.Rev. 117.)

4

§ 1462.)  Historically, misdemeanors used to be prosecuted by indictment; subsequently, they were prosecuted by indictment or information; and, immediately prior to the 1951 amendments, they were prosecuted by indictment, information, or complaint.  (See former § 801 (1872) ["An indictment for any misdemeanor must be found within one year after its commission."]; former § 801 (1880) ["An indictment for any misdemeanor must be found or an information filed within one year after its commission."]; former § 801 (1933) ["An indictment for any misdemeanor must be found or an information or complaint filed within one year after its commission."].)  Senate Bill 543, however, added a new section, section 740, which specified that "all public offenses triable in the inferior courts must be prosecuted by written complaint."  (Stats. 1951, ch. 1674, §§ 5, 6, p. 3831.)

Similarly, Senate Bill 543 also amended section 949 to reflect the separate roles of the municipal and superior courts.  Previously, section 949, which was enacted in 1872 and amended in 1880 (Stats. 1880, ch. 47, § 14, p. 12), had stated:  "The first pleading on the part of the people is the indictment or information."  Senate Bill 543 provided, "Section 949 of [the] code is amended to read:  The first pleading on the part of the people in the superior court is the indictment, information, accusation ….  The first pleading on the part of the people in all inferior courts is the complaint …."  (Stats. 1951, ch. 1674, § 42, p. 3836.)  Thus, Senate Bill 543 amended section 949 to reflect the state's two-tiered court system, where misdemeanors were tried in the municipal courts on complaints, and felonies were tried in the superior courts on informations.

Among other changes effected by Senate Bill 543 were updates to the terminology reflected in part 2 ("Of Criminal Procedure") of the Penal Code, and the addition of a provision defining important terms.  These updates, in keeping with the declared purpose of Senate Bill 543, were driven by the division of the court system into, primarily, municipal and superior courts.  In light of the two-tiered court system and the addition by Senate Bill 543 of section 740, specifying that misdemeanors were to be prosecuted

5

solely by complaint, Senate Bill 543 replaced the terms "indictment" and "information" with the new term, "accusatory pleading," in numerous provisions appearing in Part 2 of the Penal Code. (See Legis. Counsel, Rep. on Sen. Bill No. 543, July 12, 1951, p. 4 ["Bill deletes references to indictment or information, substituting therefor references to accusatory pleading."]; *People v. Tideman* (1962) 57 Cal.2d 574, 580-581 (*Tideman*) [in 1951, the words "accusatory pleading" were substituted as more briefly inclusive of the words "indictment," "information," and "complaint"].) As noted above, Senate Bill 543 also added section 691, entitled "Definitions," which defined various terms, including "accusatory pleading." (Stats. 1951, ch. 1674, § 4, p. 3830.) Section 691, subdivision (4), as added by Senate Bill 543, provided: "The words 'accusatory pleading' include an indictment, an information, an accusation, a complaint filed with a magistrate charging a public offense of which the superior court has original trial jurisdiction, and a complaint filed with an inferior court charging a public offense of which such inferior court has original trial jurisdiction." (Stats. 1951, ch. 1674, § 4, p. 3830.)

Senate Bill 543 also added a new title 2, entitled "Mode of Prosecution," to part 2 of the Penal Code. The new title 2 contained four provisions: sections 737, 738, 739, and 740. (Stats. 1951, ch. 1674, §§ 5, 6, pp. 3830-3832.) Section 737 provided: "All public offenses triable in the superior court must be prosecuted therein by indictment or information." (Stats. 1951, ch. 1674, § 6, pp. 3830-3832.) Section 738 provided (and still provides): "Before an information is filed there must be a preliminary examination of the case against the defendant and an order holding him to answer made under Section 872. The proceeding for a preliminary examination must be commenced by written complaint as provided in [section 806]." (Stats. 1951, ch. 1674, § 6, pp. 3830-3832.) Section 739, addressing the information itself (see below), was moved into the new title 2 from title 3 of part 2, where it was former section 809 (former section 809 was repealed by Sen. Bill 543). (Stats. 1951, ch. 1674, §§ 5, 6, 26, p. 3831.) Finally, section 740 (also

6

mentioned above) specified that "all public offenses triable in the inferior courts must be prosecuted by written complaint." (Stats. 1951, ch. 1674, § 6, p. 3831.)

Section 739 is pivotal to the issue before us. As stated above, as enacted by Senate Bill 543, section 739 basically tracked the language of former section 809 ("Information to be filed"), originally enacted in 1880 and last amended in 1927 (Stats. 1880, ch. 47, § 12; Stats. 1927, ch. 611, § 1, p. 1045.) Former section 809, as amended in 1927, provided in pertinent part: "When a defendant has been examined and committed, as provided in section 872 of this code, it shall be the duty of the district attorney, within fifteen days thereafter, to file in the superior court of the county in which the offense is triable an information charging the defendant with such offense.… It may charge the offense, or offenses, named in the order of commitment, or any offense, or offenses, shown by the evidence taken before the magistrate to have been committed." (Stats. 1927, ch. 611, § 1, p. 1045.) Section 739, as added by Senate Bill 543, did not substantively amend section 809; it provided (and still provides): "When a defendant has been examined and committed … it shall be the duty of the district attorney … to file in the superior court … within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed." (Stats. 1951, ch. 1674, § 6, p. 3831.) The legislative history of Senate Bill 543 indicates that section 739 established the "procedure to be followed by [the] district attorney in filing [the] information" and that this procedure had existed all along in the form of former section 809. (See Legis. Counsel, Rep. on Sen. Bill No. 543, July 12, 1951, p. 2 [§ 739 "retained" existing procedure for filing information].) Section 739 is presently entitled: "Offenses triable in superior court; information; filing; permissible charges; form."

Finally, Senate Bill 543 also amended section 954. In 1872, when section 954 was enacted, it provided: "The indictment must charge but one offense, and in one form only,

7

except that when the offense may be committed by the use of different means, the indictment may allege the means in the alternative." (Enacted Stats. 1872.) "In 1915, however, section 954 was amended to, for the first time in this state, not only authorize the charging in one indictment or information of 'two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes ... under separate counts' but also the consolidation for trial of two or more accusatory pleadings separately charging such offenses." (*Tideman*, *supra*, 57 Cal.2d at p. 580; Stats. 1915, p. 744.) Accordingly, upon its amendment in 1915, section 954 provided, in pertinent part: "The indictment or information may charge two or more different offenses connected together in their commission, or different statements of the same offense, or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated." (Stats. 1915, p. 744.)

Section 954 was further amended in 1927; the 1927 version of section 954 remained unchanged until 1951. (Stats. 1927, ch. 611, § 1, p. 1042.) Section 954, as amended in 1927, provided: "An indictment, information, or complaint may charge two or more different offenses … of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated." (See Stats. 1927, ch. 611, § 1, p. 1042.) Thus, in 1927, *after* the creation of the municipal courts, section 954 permitted consolidation when two or more informations were at issue, as it was at that point that the relevant cases were in the proper posture for consolidation (see below). This brings us to 1951 and the present version of section 954, at issue here. As amended by Senate Bill 543, section 954 provided (and still provides), in pertinent part: "An *accusatory pleading* may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same

8

class of crimes or offenses, under separate counts, and if two or more *accusatory*

*pleadings* are filed in the *same* court, the court may order them to be consolidated."

(Stats. 1951, ch. 1674, § 45, pp. 3836-3837, italics added.)

As repeatedly reflected in the legislative history of Senate Bill 543, its "declared

purpose" was to "make all the procedural provisions of the Penal Code applicable to all

proceedings in all courts." (Legis. Counsel, Rep. on Sen. Bill No. 543, July 12, 1951, p.

12.) As stated above, Senate Bill 543 added section 740, which specified, "all public

offenses triable in the inferior courts must be prosecuted by written complaint." (Stats.

1951, ch. 1674, § 6, p. 3831.) Senate Bill 543 also amended section 949 to clarify that

the first accusatory pleading on the part of the People in the inferior courts is the

complaint and in the superior courts is the information. Next, with regard to the

consolidation provision of section 954, by replacing the words "indictments or

informations" with the words "accusatory pleadings" and adding the word "same" before

court, the Legislature made this provision applicable to all courts. Specifically,

municipal courts were thereby empowered to consolidate misdemeanor complaints for

trial in the interest of judicial efficiency among other factors, and similarly, superior

courts were authorized to consolidate felony informations for trial, for the same

purposes.[8] The amendment to section 954 perfectly accorded with Senate Bill 543's

---

[8] While the 1951 version of section 954 technically appears to permit consolidation of felony complaints in municipal (now, magistrate) court, in practice this would rarely come up, as the inquiry courts undertake in considering the question of consolidation is more appropriately conducted later in the proceedings. In considering the question of consolidation, the court evaluates the cross-admissibility of the relevant offenses and evidence, the relative strength of the cases at issue, and the possibility of prejudice to the defendant. (See *People v. Lucas* (2014) 60 Cal.4th 153, 214 (*Lucas*), disapproved on other grounds by *People v. Romero and Self* (2015) 62 Cal.4th 1.) Prior to preliminary examinations in the relevant cases, there would be no evidence before the court for it to assess these factors. In any event, consolidation is superfluous at the complaint stage in light of section 1009. Section 1009 permits amendment of a complaint, with or without court permission depending on the posture of the case, to add "separate counts which might properly have been joined in the original complaint."

9

stated purpose, i.e., to make the procedural provisions of the Penal Code applicable to both the municipal and superior courts.

## II.  *The Respective Roles of Sections 739, 949, and 954*

The issue in this appeal is the propriety of the District Attorney's actions in filing a single information incorporating charges from the two separate criminal cases pending against Henson and, ultimately, the propriety of the motions judge's ruling in dismissing, under section 995, the charges related to one of the cases.  The majority endorses the procedure the District Attorney utilized here, and, in doing so, announces a new rule authorizing the People, at the point when an initial information is to be filed in multiple cases of the same type pending against the defendant, to unilaterally combine charges from such cases in a single information, the filing of which automatically serves to consolidate the underlying cases.  In reaching this conclusion, the majority diverges sharply from, and goes beyond, the District Attorney's own arguments in defense of the procedure at issue here.  I disagree with the District Attorney's contentions as well as the majority's holding, and would affirm the motions judge.

### A.  The Divergence Between the District Attorney's Argument and the Majority's Approach

The District Attorney's position is that, because an information is the People's first pleading in superior court (as opposed to municipal or magistrate court), the People have the discretion to combine charges from separate cases into a single unified information, when an initial information is due to be filed in the relevant cases.  Thus, the District Attorney argues that after initiating separate criminal cases with the same types of charges against a particular defendant, taking them to separate preliminary hearings, and obtaining separate commitment orders in each case, the People are further authorized to unilaterally combine, in a single information, the charges reflected in the commitment orders and/or preliminary hearing transcripts in those cases.  In a nutshell, the District Attorney's argument is that just as the inclusion of various charges in a complaint is a

matter of prosecutorial charging discretion, the inclusion of charges from separate cases in a single information is also a matter of prosecutorial charging discretion.  The District Attorney's argument relies on section 949, which states as a matter of fact, that the information is the first pleading on the part of the People in superior court felony cases. The District Attorney's argument also implicates sections 739 and 954.

Regarding sections 739 and 954, the District Attorney contends that while section 739 specifies that an information must be based on the commitment order or preliminary hearing in a particular case and filed within 15 days after the commitment, section 954 *independently* permits the People to add together the same kinds of charges from multiple cases in a single information.  Specifically, the District Attorney argues:  "[W]hile the filing of an information is authorized by section 739, and that section makes clear that the resulting information must be supported by what was presented to a magistrate, joinder is *separately* authorized by section 954."  (Italics added.)  In briefing and at oral argument, the District Attorney made clear that her argument rests on section 954's initial provision—which authorizes the People to bring multiple charges of the same class of offenses in an individual case—and *not* on the consolidation provision of this statute. The deputy district attorney who argued the case for the District Attorney also acknowledged that the argument that the initial provision of section 954 permits the People to combine the same types of charges from separate cases—upon the issuance of commitment orders in those cases—in one information, succeeds or fails depending on the role of section 739, with respect to the procedure for filing an information and the content of an information.  Specifically, he noted:  "I'm not trying to undercut my argument.  This is in our briefing.  The only issue that could be made is if [section] 739 is viewed as somehow restrictive rather than permissive.  In other words, if you say that by saying what must be included in the information and what time period it must be filed, that somehow precludes you from filing anything else, *well then our position is incorrect*."

11

The deputy district attorney further confirmed that the concept of consolidation was irrelevant to the People's argument, which focuses on a specific moment in time, i.e., when an initial information, the first accusatory pleading in the superior court, is to be filed in the relevant cases. He emphasized: "We did not consolidate anything. There was nothing to consolidate." When it was pointed out that a prosecutor's decision to combine charges from separate cases into a single information would not itself consolidate the respective records of these cases, the deputy district attorney disagreed. Specifically, he responded: "It is true administratively that the court creates [separate] files. That, in all candor, is none of our business.… The fact that they had two files below is not our business. It is not our fault that the court would like there to be some linear response to [the] two cases … in superior court. Again, not our issue." The deputy district attorney's nonchalant response ignored the significant confusion the purported unified information at issue here generated in the superior court clerk's office as well as among concerned parties in the courtroom. The only way the arraignment court was even able to file the unified information presented by the District Attorney was to deem the underlying cases consolidated per court order, as required under the consolidation provision of section 954 (although in reality there was no such court order).

In light of obvious deficiencies in the District Attorney's argument, the majority takes a somewhat different approach to endorse the actual practice that the District Attorney seeks to defend here, and, in turn, to reverse the motions judge's ruling. The majority accepts the District Attorney's argument that, under section 949, the information is the first pleading on the part of the People in superior court (as opposed to municipal or magistrate court), whereby the People may, at the point an initial information is to be filed in multiple relevant cases, combine, consistent with the initial provision of section 954, charges from those cases in a single information as a matter of prosecutorial charging discretion. However, the majority departs from the District Attorney's understanding of the role of section 739. Unlike the District Attorney, who argues that

12

the initial provision of section 954 provides an *independent* basis, separate and apart from section 739, to add together charges from separate cases in one information, the majority posits that section 739 *itself specifically permits* the People to combine charges from any number of separate cases in a single information. In adopting this expansive interpretation of section 739, the majority terms the District Attorney's narrower and more circumspect interpretation of the statute as "imprudent." (Maj. opn. *ante*, at p. 23, fn. 13.)

Finally, the majority addresses the consolidation provision of section 954, which permits the court, when two or more accusatory pleadings are pending in the same court, to consolidate such accusatory pleadings at the behest of either party. In interpreting this provision, the majority departs, for the second time, from the District Attorney's position, which appears to be that consolidation per se was not necessary here because the court is automatically required to merge cases upon the People's decision, under the first provision of section 954, to combine the charges from those cases in a single information and the filing of the latter. While the District Attorney argues that section 954's consolidation provision has no relevance here, the majority instead posits that the consolidation provision itself indicates that the People may unilaterally consolidate cases under the circumstances applicable here. In other words, the majority states that because the consolidation provision requires, by its own terms, court permission to consolidate two or more accusatory pleadings pending in the same court, it suggests *the People can unilaterally* consolidate cases in other circumstances, for example when there are *not* two or more accusatory pleadings pending in the same court. The majority therefore reads a negative implication into the consolidation provision of section 954, whereby this provision actually *permits* consolidation in circumstances, and by means, *other than those specified therein*. The majority in turn holds that here the District Attorney could properly combine, in a single unified information, charges from cases 119 and 499, after the issuance of the respective commitment orders in these cases, and thereby consolidate

13

these cases without providing notice to the defendant or obtaining permission from the court. The majority thus concludes that the motions judge erred in granting Henson's section 995 motion because, in ruling on the motion, the judge was required to consider the records of both case 119 *and* case 499, as they were automatically consolidated upon the filing of the unified information.

I disagree with the majority's reasoning as well as its conclusion. In my view, the District Attorney's actions are precluded by section 739, nor are they authorized by sections 949 and 954. Section 739 requires the People to file a separate information in each individual case that proceeds to preliminary examination and in which a commitment order is issued; the information must be filed within 15 days of "the commitment." As for section 949, this statute was amended in 1951, as pertinent here, to specify that "[t]he first pleading on the part of the people in the superior court is the indictment, information, accusation" and "[t]he first pleading on the part of the people in all inferior courts is the complaint." (Stats. 1951, ch. 1674, § 42, p. 3836.) Section 949 does not nullify the role of a felony complaint, and, in turn, does not authorize the People to unilaterally combine charges arising from *separate* complaints into a single information at *any* point in time. As for section 954, section 954 was amended in 1915 and 1951, as relevant here, and as is clear from its historical context, its present provisions were intended to permit the People to charge multiple offenses in an individual case and to further permit, at the behest of either party, the *municipal court* to consolidate two or more misdemeanor cases (complaints) and the *superior court* to consolidate two or more felony cases (informations). I disagree with the majority that sections 739, 949, and 954 permit the People to combine charges from separate cases, after issuance of the commitment orders therein, in a single information, and to thereby *unilaterally* consolidate these cases.

14

## B. Section 739

Taking section 739 first, this statute provides: "When a defendant has been examined and committed … it shall be the duty of the district attorney … to file in the superior court … within 15 days after *the commitment*, an information against the defendant which may charge the defendant with either the offense or offenses named in *the order of commitment* or any offense or offenses shown by the evidence taken before *the magistrate* to have been committed." (Stats. 1951, ch. 1674, § 6, p. 3831, italics added.) Notably, section 739 employs the word "the," to qualify the terms "commitment," "order of commitment" and "magistrate," instead of the words "a," "an," or "any."[9] It also uses the singular form of all these words. Furthermore, the 15-day clock specified in section 739 logically starts ticking from a *specific* moment, i.e., the moment of a particular commitment, and ends at a *specific* moment, i.e., 15 days later, so as to provide a clear mechanism to evaluate the timeliness of the subsequent information.

The language employed in section 739, as well as its mechanism for evaluating the timeliness of the information, make clear that the statute requires the district attorney to file a separate information in *each* individual case in which commitment has occurred and the clock is ticking from day 1 to day 15; the timeliness of the information can easily be assessed in relation to the date of the commitment in that case. The fact that section 739 specifies a relatively short window of time, as measured from the day of "the commitment," to file the information, also suggests the Legislature intended a separate information to be filed in each case, rather than charges from multiple cases to be combined in a single information. Furthermore, interpreting section 739 as permitting the combining of charges from multiple commitment orders and/or preliminary hearing

---

**9** Similarly, while an information may be amended to add additional counts, on account of the requirements of section 739, an information may only be amended to charge offenses shown by the evidence taken at "*the* preliminary examination." (§ 1009, italics added.)

15

transcripts in one information does not make sense as, under such a scenario, the timeliness of the information could not be evaluated with respect to a specific 15-day window, as clearly contemplated by the statute. Section 739 does not suggest that the timeliness of a particular information may be measured with respect to multiple commitments in multiple cases. Clearly, had the Legislature intended for the People to combine offenses from separate cases in one information, it would have said so and further specified how the timeliness of the resulting information was to be assessed in that scenario.

I conclude that the only reasonable way to interpret section 739 is that it requires the People to file a separate information in each case in which a preliminary hearing has occurred and a commitment order issued. As noted above, the majority takes the opposite view, specifically that section 739 permits the People to combine charges from multiple preliminary hearings and commitment orders, from separate cases, in a single information. The majority distorts the explicit language of section 739 to reach its conclusion and fails to persuasively explain when the 15-day window for filing a particular unified information, and to assess its timeliness, would begin and when it would end, given the specification in section 739 that the information must be filed "within 15 days after *the* commitment," with the word "commitment" qualified by the definite article and denoted in the singular. (§ 739, italics added.)

The proposition propounded by the People, i.e., that section 954 provides an *independent* basis, separate and apart from section 739, to combine charges from separate cases in a single information is also precluded by section 739 itself, which defines, with particularity, what an information is. Specifically, section 739 clarifies that an information may only encompass charges from "the order of commitment" and "the evidence taken before the magistrate" in a particular case, a point the District Attorney does not dispute. Indeed, the legislative history of Senate Bill 543, which enacted section 739, further establishes that section 739 specifies the "procedure to be followed by

16

district attorney in filing information," without recourse to other provisions such as section 954. (Legis. Counsel, Rep. on Sen. Bill No. 543, July 12, 1951, p. 2.) The District Attorney has not supplied any authority for the novel idea that section 954's initial provision provides an avenue to circumvent section 739's limitation on the scope of an information.

In sum, the District Attorney's argument that the People may properly file the unified information at issue here, is foreclosed by section 739, which, as explained above, requires the filing of a separate information in each case in which "the commitment" has occurred. (§ 739.) This interpretation of section 739 is further buttressed by the jurisprudence interpreting this statute. For example, numerous cases clarify that an information may not "charge a crime unrelated or unconnected with the transaction which was the basis of the commitment order." (See, e.g., *People v. Kellin* (1962) 209 Cal.App.2d 574, 575-576; also see *People v. Burnett* (1999) 71 Cal.App.4th 151, 165; *People v. Terry* (2005) 127 Cal.App.4th 750, 765-766; *People v. Thiecke* (1985) 167 Cal.App.3d 1015, 1017, fn. 1.) The case law addressing section 739, a statute that in substance has been unchanged since 1880, does not suggest that the People can unilaterally include charges from multiple commitment orders, in separate cases, in a single information. On the contrary, the case law indicates that section 739 requires a separate information to be filed in each case based on the commitment order and/or preliminary hearing transcript related to that case. This interpretation of section 739 also accords with the requirement that a defendant have notice, as a matter of due process, of all the potential charges he faces *in a given case*. (See *Burnett, supra,* at p. 175 ["the preliminary hearing transcript … is the touchstone of due process notice to a defendant"]; *People v. Superior Court* (*Mendella*) (1983) 33 Cal.3d 754, 764.) Of course, after the information is filed in a particular case, the court may, upon conducting the requisite inquiry, order the consolidation of that case with another case, or other cases, in the same posture.

17

## C. Sections 954 and 949

As for the role of section 954, as indicated above, the first provision of section 954 simply permits the People to file multiple *charges* in an individual case, starting with the complaint, and by way of the complaint, preliminary examination, and commitment order, in the eventual information, or, by means of amendment or formal consolidation by the court.  This provision reflects a departure from the earliest versions of the statute that required the People to charge only one offense in an individual case.  It does not permit the People to combine charges from separate complaints or cases in one information, so as to effectively consolidate separate cases without court permission.  I thus disagree with the majority's conclusion that the District Attorney's actions here were authorized by sections 739, 949, and the initial provision of section 954, and further, that the filing of the unified information consolidated the two underlying cases consistent with the consolidation provision of section 954.  In my view, the People do not have the same discretion to add charges in an information that they possess at the point of filing an initial complaint.  The People's discretion as to the range of charges that may be included in an information is limited, as explained above, by section 739.  To the extent the People want to combine charges from two separate cases in one information, they may do so by filing a separate information in each case pursuant to section 739 and, thereafter, moving to consolidate the two informations under the consolidation provision of section 954.

Turning to the consolidation provision of section 954, I agree with the majority that the use of the term "the same court" in the consolidation provision of section 954 signifies the two-tiered system of municipal and superior courts that existed in 1951, when the statute was last amended to insert the word "same" before the word "court." However, in contrast to the majority, I believe the context and purpose of the 1951 amendment shows that the term "the same court" was deployed to specifically permit (1) consolidation for trial of two or more misdemeanor complaints in the municipal courts, and (2) consolidation for trial of two or more informations in the superior court.  In other

18

words, the consolidation provision of section 954 contemplates that consolidation in *felony* cases would occur, by order of the court, *after* filing of the informations in, and transfer of, the relevant cases from municipal court to superior court. Once the informations are filed and the cases transferred to superior court, then, under section 954, these cases are in the appropriate posture for consolidation for trial, *at the behest of either party*. (See, e.g., *People v. Jerez* (1989) 208 Cal.App.3d 132, 137 [under § 954, consolidation or joinder of cases requires court permission and either party may move the court to do so]; *People v. Gonzales* (1990) 220 Cal.App.3d 134, 142-143 ["[S]ection 954 controls consolidation in criminal proceedings," whereby "[t]he court, in its discretion may order consolidated accusatory pleadings charging … 'two or more different offenses of the same class of crimes or offenses'"]; *People v. Maury* (2003) 30 Cal.4th 342, 391 [trial court effects joinder of accusatory pleadings containing "'[o]ffenses falling within [section 954's] description'"].) Indeed, since consolidation is permitted only when two misdemeanor complaints or two felony informations are pending in the same court, section 954, *unlike* numerous other statutes, did not require amendment after unification of courts in California.

Thus, the plain language of section 954 makes perfectly clear that consolidation is the province of the court and further, that consolidation is permitted only when two or more accusatory pleadings are pending in "the same court." (§ 954.) In addition, the nature of the inquiry applicable to consolidation or joinder of accusatory pleadings—which requires consideration of factors such as cross-admissibility of the relevant crimes and evidence, the strengths of the relevant cases, and prejudice—indicates that the statute contemplates that consolidation or joinder of cases is to be effected by the court alone, and not, under any circumstances, by the district attorney. (See *Lucas*, *supra*, 60 Cal.4th at p. 214.)

The legislative history of section 954 also supports the interpretation of the statute's consolidation provision that I posit here. First, the Legislative Counsel's Report

on Senate Bill 543 notes that the term "accusatory pleading" was in fact intended to signify an "indictment, information, accusation, and complaint filed with court having original trial jurisdiction of offense stated therein." (Legis. Counsel, Rep. on Sen. Bill No. 543, July 12, 1951, pp. 1, 4.) Second, both the Legislative Counsel's report and a letter from the Alameda County District Attorney to the Governor's legislative secretary indicate that "the principal purpose of [the changes made by Senate Bill 543] is to make the procedural provisions of the code applicable to all proceedings in all courts." (J.F. Coakley, District Attorney of Alameda County, letter to Beach Vasey, Legislative Secretary, July 3, 1951; Legis. Counsel, Rep. on Sen. Bill No. 543, July 12, 1951, p 12.) In sum, when section 954 is viewed in the context of the 1951 amendments that enacted the current version of the statute, it becomes clear that its consolidation provision was intended to permit the consolidation, in the municipal court, of two or more misdemeanor complaints and, similarly, the consolidation, in the superior court, of two or more informations.

While, as stated above, the majority and I agree as to the significance of the term "the same court" in the consolidation provision of section 954, my ultimate takeaway from this point of commonality is very different from the majority's. To my mind, the consolidation provision of section 954 is unambiguous and must be interpreted in accordance with its plain meaning as well as its legislative history. The provision's plain terms demonstrate that the Legislature affirmatively made consolidation a matter of judicial discretion and, in felony cases, effectively limited it to the stage when the cases at issue had moved from the municipal (or magistrate) court to the superior court, i.e., the stage *after* filing of the information in the superior court. The legislative history, as noted above, in turn reinforces this interpretation. The consolidation provision of section 954, correctly interpreted, thus precludes any attempt by the District Attorney to unilaterally consolidate separate cases, and along with section 739, further precludes consolidation of felony cases before an information has been filed in each relevant case. Here, the unified

20

information therefore did not automatically consolidate the relevant cases, and, as explained in more detail below, the motions judge in turn appropriately evaluated Henson's section 995 motion with reference to the record of case 119 alone and correctly dismissed counts 1-4.

The majority has a more generous takeaway from the proposition that the term "the same court" in section 954 is a reference to the distinction between municipal (and, now, magistrate) courts on the one hand and the superior court on the other. Specifically, the majority asserts, "[i]t is logical to conclude," based on the erstwhile "separation of courts," that "section 954 meant judicial permission was required to consolidate two or more accusatory pleadings filed in municipal court, or two or more accusatory pleadings filed in superior court," but such "[p]ermission would *not* have been required [for the People to] file a single information as their first pleading in superior court" covering charges from "separate complaints." (Maj. opn. *ante*, at p. 15.) Thus, brushing aside section 954's affirmative mechanism for consolidating cases, a mechanism that also drives the record-keeping and docket management procedures of the courts, the majority declares that "while court permission is required to consolidate two complaints or two informations, it is *not* required to incorporate two complaints into a single information where that information is the People's first pleading at the superior court stage of proceedings." (Maj. opn. *ante*, at p. 21.) The majority thus holds that filing a combined information, such as the one at issue here, automatically consolidates the underlying cases. In turn, it finds that the motions judge erroneously granted Henson's section 995 motion to dismiss counts 1-4 of the information, because he improperly failed to consider the records of both cases, including both commitment orders and preliminary hearing transcripts, as he was required to do.

In contrast to the majority, the District Attorney relies solely on the first provision of section 954 (which permits the People to charge multiple offenses in an individual case) and *explicitly rejects* the proposition that a consolidation of the relevant cases

21

occurred or was necessary here. However, charging multiple offenses in a particular case is conceptually distinct from joining or consolidating separate *cases* or *accusatory pleadings* for purposes of one trial and judgment. When the People include multiple charges under separate counts in a complaint, it has no implications regarding the merger of any records or any effect on the record of another case. In contrast, joinder or consolidation of separate accusatory pleadings signifies the merging of the complete records of separate actions. When a court orders consolidation under section 954's consolidation provision, the dockets of the erstwhile separate actions are effectively fused, and the consolidated action proceeds under the number of one of the constituent cases designated by the court as the *lead* case. The orderly process contemplated by section 954—one that generally proceeds on the basis of a written, noticed motion—thus equips courts to properly designate and manage the dockets of consolidated cases and there is no confusion as to the status of the underlying cases and the records thereof. The District Attorney's reliance on the first provision of section 954 alone is unavailing, as this provision does not permit the courts to merge the records of the underlying actions; in turn counts 1-4 of the unified information were properly dismissed by the motions judge pursuant to Henson's section 995 motion. As for the majority's interpretation that the records of the two cases were in fact consolidated upon the filing of the unified information, on the basis of a negative implication of the consolidation provision, this interpretation is precluded by section 739 and the plain language of the consolidation provision itself.

### D. The Majority's Expansive and Speculative Interpretation of the Relevant Statutes Violates Established Canons of Statutory Interpretation

The majority's conclusions depend on expansive and speculative interpretations of all the statutes at issue—i.e., sections 739, 949, and 954—that violate established canons of statutory interpretation, which favor interpreting unambiguous statutes in accordance with their plain meaning and construing them narrowly to achieve their purpose. For

22

example, the majority's expansive interpretation of section 739 clearly conflicts with the plain meaning of that statute. Similarly, although section 949 simply states that the first pleading on the part of the People in the superior court is the information, the majority imputes far greater meaning to that statute than its plain terms warrant. Specifically, the majority posits that section 949 and the first provision of section 954, taken together, authorize the People to combine charges from separate cases in a single information in a manner akin to the exercise of discretion the People employ at the time of filing an initial complaint. In addition, with regard to the consolidation provision of section 954, although this provision specifies that consolidation is the province of the court alone, the majority nonetheless manages to discern therein, by virtue of negative implication, an endorsement of unilateral consolidation of cases by the People, by means of filing a combined or unified information incorporating charges from the cases at issue as the People's first pleading in the superior court. However, reliance on putative negative implications is wholly unnecessary here, and further is speculative, because the consolidation provision of section 954 affirmatively authorizes, consistent with section 739, a procedural mechanism to attain the precise end result the District Attorney was trying to achieve here (namely, consolidation of the underlying cases). Rather than following the harmonious statutory mandates of sections 739, 949, and 954, the majority, without authority, chooses to alter the roles and expand the reach of these statutes far beyond the import of their plain terms.

The majority supplies no persuasive justification for contravening the above-mentioned basic canons of statutory interpretation in positing such an expansive and speculative interpretation of sections 739, 954, and 949. (See *Bakersfield Home Bldg. Co. v. J.K. McAlpine Land & Development Co.* (1938) 26 Cal.App.2d 444, 448-449 ["[C]ourts are not at liberty to refuse to apply unambiguous language in a statute which involves no absurdity nor any necessary inconsistency with its general purpose; nor may they indulge in mere speculation to the effect that the legislature meant something other

23

or less than what it said. They may not depart from the literal construction of the statute unless they can be reasonably assured that the legislature meant to say something different from what it appears to have said."]; *Chapman v. Aggeler* (1941) 47 Cal.App.2d 848, 853 ["When legislators speak through statutes, their enactments must be given a strict interpretation. The law must be applied as it is written. It cannot be extended by judicial interpretation."].) In contrast, the narrower interpretations of these statutes find support in their plain terms, longstanding canons of judicial interpretation, as well as the legislative history of Senate Bill 543, which enacted the present versions of these statutes. Indeed, the fact that Senate Bill 543 effected a comprehensive overhaul of the criminal procedure provisions of the Penal Code suggests that, had the Legislature wanted to authorize the procedure the majority endorses today, it would have provided for it in Senate Bill 543.

I conclude that section 739, by requiring the People to file a separate information in each case, precludes what the District Attorney attempted to do here. Nor do sections 949 and 954 authorize the District Attorney's actions. The first provision of section 954 simply permits the People to bring multiple charges, under separate counts, in an individual case, in a departure from the earliest versions of the statute that required the People to charge only one offense in each case. As for the consolidation provision, consolidation entails the fusing together of two separate cases and therefore occurs, pursuant to court order, when two or more accusatory pleadings are pending in the same court. The fact that either party can pursue consolidation, as well as the criteria that govern the propriety of consolidation, further establish that consolidation is solely a matter of judicial discretion.

### E. The Motions Judge's Ruling was Correct and Properly Avoided the Problems that will Flow from the Majority's Holding

The Penal Code's procedural provisions map out a fairly straightforward, predictable trajectory for criminal cases. Cases proceed from complaint to preliminary

24

hearing and the issuance of a commitment order. Section 739 requires an information to be filed in each individual case within 15 days after commitment. If two or more informations are filed in relevant cases in the superior court, they may be consolidated by the court upon the motion of any party seeking consolidation. Here, the District Attorney could easily have complied with section 739 and filed two separate informations in the two cases pending against Henson. The District Attorney could then have moved to consolidate the cases in compliance with the consolidation provision of section 954. Instead, the District Attorney chose to file a single information in case 119 encompassing seven counts, four of which were based on the commitment order in the other case. Since the District Attorney failed to follow the statutory requirements for filing an information and thereafter for consolidating cases, the purported unified information did not consolidate the relevant cases. The cases and their respective records thus remained separate.

The majority contends that Henson was limited to a demurrer in contesting the unified information. A demurrer raises an issue of law as to the sufficiency of the pleadings and lies only for defects appearing on the face of the accusatory pleading. (§ 1004; see *People v. McConnell* (1890) 82 Cal. 620.) Although Henson had the option of filing a demurrer, he was not limited to that remedy, nor does it appear that a demurrer would have been sustained. Severance also is not the proper remedy as, like a demurrer, it too is not geared to attack the false premise of the purported unified or consolidated information. More specifically, the information purported to be based on a consolidated record but the records of the relevant cases were not in fact consolidated. Henson therefore properly opted to bring a section 995 motion, as such a motion requires the court to evaluate the charges included in the information against the underlying record. Specifically, in ruling on a section 995 motion, the court considers whether the charges in an information find support in the commitment order or preliminary hearing transcript in the record. (See *People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226;

25

*People v. Graff* (2009) 170 Cal.App.4th 345, 360-361.) As here the two relevant cases were not in fact consolidated, the motions judge was forced to evaluate the information against the discrete record of case 119. The commitment order and preliminary hearing transcript therein did not support counts 1-4. The motions judge thus properly dismissed those counts.

The majority does not explain how the practice at issue in this appeal is supposed to work "on the ground." Its expansive interpretation of sections 739, 949, and 954 has the potential to significantly disturb the superior courts' record-keeping procedures and docket management practices, and to nullify the concept of the "record of the case." The majority has essentially held that the People may unilaterally choose to file separate informations in separate cases *or* a single information that automatically merges a number of separate cases, without prior notice to the defendant or the court. When the People exercise the latter option, the courts, under the majority's holding, will now be required to merge the relevant case dockets under a lead case self-designated by the People, something that heretofore occurred only pursuant to court order. It follows that a prosecutor, by simply designating a lead case, will be able to dictate which defense attorney and court department the resulting unified case will be directed to at arraignment. And this would occur without any notice to the defendant and his respective attorneys, who not only will not know what to expect but also will be denied an opportunity to be heard before the People summarily join pending cases. The various court departments handling the affected cases would similarly be blindsided. A state of uncertainty would prevail as to how the People may choose to proceed when the time comes to file an information. In the instant case, the information was filed on the day of arraignment, which was set at the same time and in the same department in both cases, but there is no guarantee of that in all or even most instances in which this procedure will now be applicable. The majority's decision does not provide any guidelines for resolving these problems, nor does it explain the value of the procedure it endorses today, in

26

comparison with the more straightforward and orderly procedure that is usually followed. In my view, rather than being beneficial, the new procedure approved by the majority creates the potential for significant confusion and disruption in the courts and substantial prejudice to defendants.

The majority also does not address the situation that occurred here, when the District Attorney's filing of the purported unified information led to the abrupt disqualification of one of the defendant's attorneys, eviscerating her ability to contest the move. The ensuing confusion resulted in unnecessary, even prejudicial, delays (defendant was in custody at the time), until a new attorney, who had not handled the preliminary hearing and knew nothing about the case, got up to speed on it. In a situation where the defendant is represented by multiple attorneys in the underlying cases, which attorney is supposed to handle the new, unified case, and file, for example, a section 995 motion or other motion to contest the information? The majority provides no answers.

The potentially disruptive consequences of the majority's decision represent yet another reason that the applicable statutes must be read narrowly and in accordance with their plain meaning. I see no reason to upend the orderly procedural scheme contemplated by sections 739 and 954, statutes that, in substance, have been part of the Penal Code since 1880 and 1915, respectively. As the saying goes, "if it ain't broke, don't fix it." I would affirm the trial court.

_____
SMITH, J.

27